## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| JASON WHEELER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | 1: 14-CV-9 (WLS) |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on January 10, 2014, challenging the

Commissioner's final decision denying his application for disability benefits, finding him not disabled

within the meaning of the Social Security Act and Regulations.   (Doc. 1).   Jurisdiction arises under 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c).     All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the

Commissioner's decision is supported by substantial evidence and whether the Commissioner applied

the correct legal standards to the evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007).   The Commissioner's factual

findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla,

such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh

the evidence or substitute its judgment for that of the Commissioner.   "Even if we find that the evidence

preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.   "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process.   20 C.F.R. § 404.1520.   In Step One, the Commissioner determines whether the claimant is working.   In Step Two, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations.   At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work.   Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed his application for Supplemental Security Income benefits on February 5, 2010. (Tr. 12, 117-20, 123).   His claim was denied initially and upon reconsideration.   (Tr. 12, 53-58, 61-63). A video hearing was held before an Administrative Law Judge ("ALJ"), who presided from Knoxville, Tennessee, on June 27, 2012.   (Tr. 29-52).   Thereafter, in a hearing decision dated July 26, 2012, the ALJ determined that Plaintiff was not disabled.   (Tr. 12-19).   The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.   (Tr. 1-5).

*Statement of Facts and Evidence*

Plaintiff was twenty-eight (28) years of age at the time of the hearing before the ALJ, and alleged

disability since July 1, 2009, due to schizophrenia.   (Tr. 34, 123, 128).   Plaintiff completed high school,

and has no past relevant work experience.   (Tr. 18, 37, 129).

As determined by the ALJ, Plaintiff suffers from the following severe impairments:

"schizophrenia, anxiety and substance abuse disorder."   (Tr. 14).   The ALJ found that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled a listed impairment,

and he remained capable of performing a full range of work at all exertional levels with the following

nonexertional limitations:

> he can understand and recall simple instructions and work locations, but may
> have trouble with detailed or complex instructions; can perform simple tasks
> and sustain concentration, persistence and pace throughout a workday; is
> best suited for a low-demand work environment but not limited to one;
> ordinary supervision is adequate; psychiatric signs and symptoms will rarely
> intrude during a usual workday or week; will function best if not required to
> relate to the public and can handle ordinary supervision sufficiently well; not
> likely to distract others with psychologically-based behaviors, signs or
> symptoms; can sufficiently handle interaction with coworkers; is able to
> avoid hazards and sufficiently adapt to workplace changes, would function
> best in a workplace setting with defined tasks and in which he is not required
> to develop independent goals.

(Tr. 14, 16).   The ALJ considered Plaintiff's age, education, work experience, and residual functional

capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of

performing jobs that existed in significant numbers in the national economy, and thus was not disabled.

(Tr. 18-19).

## DISCUSSION

Plaintiff alleges that the ALJ erred by failing to give proper weight to the physician opinions, by

failing to include all credited limitations in the hypothetical posed to the Vocational Expert, and by

failing to properly consider Plaintiff's credibility.   (Docs. 13, 15).

***Physician Opinions***

*Treating Physician*

Plaintiff alleges that the ALJ failed to give proper weight to the opinions of Dr. Nikil Nihalani,

Plaintiff's treating psychiatrist.   (Docs. 13, 15).   When assessing the evidence, "[t]he testimony of the

treating physician must ordinarily be given substantial or considerable weight unless good cause is

shown to the contrary."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   The

Commissioner's regulations also state that more weight should be given to opinions from treating

sources because they can provide a detailed look at the claimant's impairments.   20 C.F.R. §

404.1527(c)(2).   "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a

treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440

(11th Cir. 1997).   "Good cause" as to why the Commissioner did not rely on the treating source's

opinion can exist when the physician's opinion was not supported by the record evidence, the evidence

supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the

physician's own medical records.  *Id.*

Dr. Nihalani submitted a Mental Impairment Questionnaire, wherein she stated that Plaintiff had

been diagnosed with schizophrenia, social anxiety disorder, and marijuana dependence.   (Tr. 219-21).

Dr. Nihalani opined that Plaintiff's orientation, appearance and general behavior, mood, thought

processes and flow of mental activity, content of thought, recent and remote memory, and

insight/judgment/impulse control were normal.   (Tr. 219-20).   Plaintiff had no suicidal/homicidal

ideations and no psychotic signs or symptoms.   (Tr. 220).   Dr. Nihalani opined that Plaintiff's affect

was constricted, and Plaintiff was abnormal in his ability to understand, remember and carry out simple

instructions, to get along with the public, with supervisors and with co-workers, to deal with changes in

the work setting, and to make simple work-related decisions.   (Tr. 219-21).   It was Dr. Nihalani's

4

opinion that Plaintiff was somewhat likely to decompensate or become unable to function under stress, and she found that Plaintiff was not competent to handle funds.   (Tr. 221).   Despite instructions to do so, Dr. Nihalani did not provide explanations for the areas in which she found Plaintiff to be "abnormal". (Tr. 219-21).

The ALJ gave little weight to Dr. Nihalani's opinion "because the meaning of the word 'abnormal' and its relevance to the appropriate descriptors of mild, moderate and marked remain unclear.   The residual functional capacity recognizes and accommodates some level of abnormality in the areas suggested but the undersigned cannot determine with confidence Dr. Nihalani's specific meaning in stating these areas are 'abnormal.'"   (Tr. 18).

A "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).   Dr. Nihalani did not provide any explanation for her findings of "abnormal".   Further, Dr. Nihalani's treatment notes do not provide sufficient explanations for her "abnormal" findings.   The treatment notes indicate that Plaintiff's speech was normal, his mood was euthymic (normal, non-depressed), his thought process was normal, he had no abnormal thought content, and had no "orofacial dyskinetic involuntary movement".   (Tr. 208-11, 213-14, 217, 252-56, 258-59).   Dr. Nihalani did note that Plaintiff's affect was slightly constricted.   (Tr. 208-11, 213-14, 217, 252-56, 258-59).   As Dr. Nihalani did not explain her opinions and her treatment notes do not support her opinions, the ALJ did not err when he discounted the opinions of Dr. Nihalani.   *See Donnell v. Astrue*, 2012 WL 6106412, *6 (M.D. Fla., Nov. 21, 2012) (finding the ALJ properly discredited the opinion of a treating physician who "gave no explanation in support of his opinion apart from repeating his diagnoses")

Plaintiff contends that the ALJ should have recontacted Dr. Nihalani when he found her opinions did not contain a sufficient explanation for the use of "abnormal".   (Doc. 13).   The ALJ has a duty to

develop a full and fair record.   *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).   The ALJ "must

have sufficient evidence to decide the case."   *Mace v. Astrue*, 2008 WL 4058050, *5 (N.D. Fla., Aug.

27, 2008).   Where the record contains sufficient evidence for the ALJ to decide the case, he is not

required to recontact a physician.   *See Graham v. Apfel*, 129 F.3d 1272, 1276 (11th Cir. 2003).   The

ALJ had all the information needed to make a decision in this case, including Dr. Nihalani's treatment

notes.   Thus, the ALJ was not required to recontact Dr. Nihalani for further definition and explanation

for each answer of "abnormal".   *See Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir. 2008) (finding

the ALJ did not have a duty to recontact a treating physician when there was substantial evidence to

support the ALJ's decision and the ALJ possessed all the physician's medical records).

*Consultative Examiner*

     Plaintiff also alleges that the ALJ erred by giving significant weight to the opinions of Dr. Marvin

Blase, a non-examining state agency psychological consultant.   (Docs. 13, 15).   State agency

psychological consultants are highly qualified psychologists who are experts in Social Security

disability evaluation.   20 C.F.R. § 404.1527(f)(2)(i).   "In appropriate circumstances, opinions from

State agency medical and psychological consultants . . . may be entitled to greater weight than the

opinions of treating or examining sources."   SSR 96-6p.   The weight given to a non-examining

consultant's opinion depends on "the extent to which it is supported by clinical findings and is

consistent with other evidence."   *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir.

2011); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

     The ALJ gave significant weight to Dr. Blase's opinions because they were "well supported by

the evidence, in particular, the claimant's daily activities, . . . and his presentation during psychological

treatment, the hearing and at the field office interview, during which he did not demonstrate noticeable

symptoms."   (Tr. 18).   Dr. Blase opined that Plaintiff

does retain the ability to understand and recall simple instructions and work locations.  [Plaintiff] may have problems understanding and recalling more detailed and complex instructions. . . . [Plaintiff] retains the ability to perform simple tasks.  [Plaintiff] can sustain adequate [concentration, persistence, and pace] throughout the extended day.  A more flexible and low demand work environment would be preferable but not required.  Ordinary supervision would be required.  Psych based [signs/symptoms] will rarely intrude during the usual workday/workweek. . . . [Plaintiff] would function best in a position that did not require that he relate to the public.  [Plaintiff] can sufficiently handle ordinary supervision.  [Plaintiff] would not likely distract others based on the presence of psych based behaviors or [signs/symptoms]. [Plaintiff] can sufficiently handle interaction with coworkers. . . . [Plaintiff] would be able to avoid hazards and could sufficiently adapt to workplace changes.  [Plaintiff] would function best in a workplace setting with defined workplace tasks and not be required to develop independent workplace goals.

(Tr. 224).

Plaintiff was diagnosed with schizophrenia, undifferentiated type, social anxiety disorder, and marijuana dependence.  (*See e.g.* Tr. 252).  The evidence shows that Plaintiff typically reported no anxiety, no depressive symptoms, no hallucinations, delusions, or other symptoms of psychotic process, and he denied manic symptoms.  (Tr. 206-11, 213-14, 252-53, 273).   Plaintiff's speech was normal, his mood was euthymic, he had no abnormal thought content, and his thought process was normal. (*See e.g.* Tr. 206-11, 213-14).  Plaintiff's affect was slightly constricted.  (Tr. 206-14).  Plaintiff had no thoughts to harm himself or others, and no "orofacial dyskinetic involuntary movement" was noted. (Tr. 206-11, 213-14, 258).   Plaintiff's thought process was reported to be little impaired, and his speech was illogical at times.   (Tr. 273-78, 280).

Plaintiff's mother provided a Function Report –Adult –Third Party, wherein she stated that Plaintiff works around the house 2 or 3 times per week, helps paint rental units for about 6 hours per week, has no problems with his personal care, and prepares simple meals daily.   (Tr. 145-47).  Plaintiff is also able to do laundry, iron, and mow, but needs reminders.  (Tr. 147).  Plaintiff is able to

drive a car, go out alone, and shop, pay bills, and count change.   (Tr. 148).   As Dr. Blase's opinions are consistent with the evidence, the ALJ did not err in giving significant weight to Dr. Blase's opinions.

***Vocational Expert's Testimony***

Plaintiff also asserts that the ALJ committed error by failing to include all of Dr. Marvin Blase's credited limitations in the hypothetical posed to the Vocational Expert ("VE").   (Docs. 13, 15).   Once a claimant proves at Step Four that he can no longer perform his past relevant work, the burden shifts to the Commissioner to establish that other jobs exist in the national economy that the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   The testimony of a VE may provide the basis for a finding by the ALJ that Plaintiff can still perform other jobs at Step Five. *Id.*   "In order for a vocational expert's testimony to constitute substantial evidence [for a finding at Step Five], the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

For the VE's testimony to qualify as "substantial evidence", the hypothetical question posed must "include or otherwise implicitly account for all [the plaintiff's] impairments."   *Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011).   The ALJ posed a hypothetical question to the VE that incorporated Plaintiff's limitations.   (Tr. 49).   The hypothetical question mirrored Plaintiff's Residual Functional Capacity, and specifically referenced Dr. Blase's functional capacity assessment of Plaintiff.   (Tr. 16, 49, 224).

Plaintiff alleges that the ALJ failed to incorporate the limitations marked in Section I of Dr. Blase's Assessment.   As stated in the Assessment, Dr. Blase was to explain the checked boxes from Section I in Section III (the functional capacity section).   (Tr. 222-24).   All checked boxes that Plaintiff alleges were not included in the hypothetical question were incorporated into Dr. Blase's functional capacity assessment.   (Tr. 49, 222-24).   As the hypothetical question was based on Dr. Blase's

functional capacity assessment, Dr. Blase's entire opinion was included in the hypothetical.

The hypothetical question posed to the VE accounted for Plaintiff's impairments, and thus the ALJ did not err.   *See Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1180 (11 th Cir. 2011) (noting that hypothetical questions adequately account for a claimant's limitations when the hypothetical questions implicitly account for all the limitations); *Moore v. Commissioner of Social Sec.*, 478 Fed. Appx. 623, 625 (11th Cir. 2012) (finding the ALJ's hypothetical question accounted for all the limitations stemming from the plaintiff's impairments, and therefore the VE's testimony constituted substantial evidence).

### *Plaintiff's Credibility*

Plaintiff alleges that the ALJ erred when he assessed Plaintiff's credibility.   (Docs. 13, 15).   If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then she must consider the claimant's subjective testimony of the symptoms.   *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence.   20 C.F.R. § 404.1529(c).   The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information.   SSR 96-7p.

The ALJ determined that:

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be

expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 17).   The ALJ determined that Plaintiff lacked credibility because the record failed to reflect the severity of symptoms alleged by Plaintiff, Plaintiff had a history of illegal drug use, Plaintiff's assertions regarding medication side effects were not supported by the record, and Plaintiff's daily activities did not support his allegations of disabling impairments.   (Tr. 17).

The record shows that, in general, Plaintiff had no described anxiety, no described depressive symptoms, no hallucinations, delusions, or other symptoms of psychotic process, and he denied manic symptoms.   (Tr. 206-11, 213-14, 252-53, 273).   Plaintiff's speech was generally normal, his mood was euthymic, he had no abnormal thought content, and his thought process was generally normal. (*See e.g.* Tr. 206-11, 213-14).   Plaintiff's affect was slightly constricted.   (Tr. 206-11, 213-14).

Plaintiff's medical records also indicate that he has been diagnosed with marijuana dependence. (*See e.g.* Tr. 206-11, 213-14).   Plaintiff's "parents have correlated his symptoms to marijuana use that he has used for several years."   (Tr. 191).   Plaintiff reported to his doctors in 2008 and 2009 that he did not have recent substance use.   (Tr. 205-10).   When questioned by the ALJ in June of 2012, Plaintiff testified that he last used marijuana in February of 2012.   (Tr. 39).

Additionally, Plaintiff testified that he would be unable to work because his medication made him tired.   (Tr. 38).   However, the record shows that Plaintiff typically denied being tired or having daytime sedation.   (*See* Tr. 207, 208).   Plaintiff denied side effects due to his medications during at least two appointments.   (Tr. 205, 206).   Plaintiff did report that his Abilify prescription was causing restlessness and he was getting tired; this medication was stopped.   (Tr. 204-05).   He was also switched off Geodon because of muscle rigidity and involuntary muscle movement.   (Tr. 275, 278).

The ALJ also found Plaintiff's activities of daily living belied his allegations of disability.   (Tr.

17).   Plaintiff's mother provided a Function Report –Adult –Third Party, wherein she stated that Plaintiff works around the house 2 or 3 times per week, helps paint rental units for about 6 hours per week, has no problems with his personal care, and prepares simple meals daily.   (Tr. 145-47). Plaintiff is also able to do laundry, iron, and mow, but needs reminders.   (Tr. 147).   Plaintiff can drive a car, go out alone, and shop, pay bills, and count change.   (Tr. 148).

The ALJ applied the correct legal standard, in that, he relied on the record as a whole to determine that Plaintiff's testimony was not credible.   The ALJ adequately considered Plaintiff's subjective accounts of symptoms and limitations, and did so pursuant to the governing rulings and regulations. The ALJ also provided adequate and specific reasons for discrediting Plaintiff's subjective accounts, relying on the medical evidence and Plaintiff's activities of daily living.   As there is substantial evidence to support the ALJ's credibility determination, the ALJ did not commit reversible error.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 18th day of August, 2014.

s/ *THOMAS Q. LANGSTAFF*
**UNITED STATES MAGISTRATE JUDGE**

llf